IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DEBORAH STRICKLAND,** | ( | |
| *Plaintiff* | ( | |
| | ( | |
| v. | ( | Civil Action No. 4:18-cv-716 |
| | ( | |
| **SHARKNINJA OPERATING LLC** | ( | |
| *Defendant.* | ( | JURY DEMAND |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW**, DEBORAH STRICKLAND (hereinafter "Plaintiff"), filing this *Original Complaint* against SHARKNINJA OPERATING LLC (hereinafter "Defendant"), and alleges as follows:

**PARTIES JURISDICTION AND VENUE**

1. Plaintiff Deborah Strickland is a citizen of the State of Texas.

2. Defendant Sharkninja is a Massachusetts Corporation with its corporate headquarters in Newton, Massachusetts. All acts and omissions of Defendant as described herein were done by its agent, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

3. Plaintiff is seeking damages in excess of $75,000.00. Subject matter jurisdiction is proper pursuant to 28 U.S.C. §1332.

4. Sharkninja is subject to *in personam* jurisdiction in the U.S. District Court for the Southern District of Texas because it placed a defective product in the stream of commerce in the Southern District of Texas and that product caused personal injuries to Deborah Strickland.

5. Defendant has significant contacts with the Southern District of Texas such that it is subject to personal jurisdiction within said district.

6. Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Southern District of Texas.

## FACTUAL BACKGROUND

7. On or around March 10, 2016, Plaintiff was using the Blender to make a smoothie. During the process of making the smoothie, the blender suddenly stopped working.

8. Plaintiff opened the Blender to determine what caused the malfunction. Plaintiff discovered that the plastic that held the medal blade was jammed and was not running. As she tried to pull it apart the machine turned on causing severe injuries to her hand. Despite her injuries and pain symptoms, Ms. Strickland continued to perform some of her domestic duties. As a result, we are making a claim for Duties Under Duress for Domestic duties. Ms. Strickland struggled with eating. When she would try feeding herself she would often spill or drop her food, often on her clothing. This would cause so much frustration at times, that she would lose her patience and appetite. Preparing food has also been a struggle. She could not properly dip with spoons and forks, or spread and cut efficiently with knives. Reaching and grabbing for items such as: pots, pans, bowls and cups. This continues to be fairly difficult because of the limitations placed upon her fingers. Often times, the weight of normal kitchen appliances would result in pain.

**Personal Hygiene**. Sadly, the damage from your product resulted in Ms. Strickland having complications with hygiene. Ms. Strickland has had difficulty wiping excrement from her rear after releasing her bowels. In order to compensate, Ms. Strickland had to take more showers than usual, which was also tedious, but the water aided in cleansing areas that were difficult to service via hand. During showers, it was hard for Ms. Strickland to grab ahold of her washing towel.

**Showering / Marriage Strain**. Applying pressure with the towel to scrub her body would cause sharp pain. Drying herself completely, after showers were so difficult at times, that it would drain her energy, making her tired sometimes right before heading off to work. At times her husband would have to assist her in ensuring that she was cleaned in a proper fashion. Of course, this resulted in a high level of embarrassment inside of Ms. Strickland's marriage. To compensate, she would also do laundry more than usual.

**Dental Hygiene**. The simple tasks of daily dental hygiene, brushing teeth and flossing has been painful and difficult because one needs to hold the toothbrush firm and steady to correctly clean the teeth and mouth.

**Grooming**. Ms. Strickland has had trouble with grooming. When she would brush her hair after showers, her hair would get tangled at times. She had to use her wrist to pull the brush from her head in order to avoid causing pain to her injuring fingers. This task was most difficult when brushing the back of her hair the best way possible, from top to bottom.

**Dressing**. Ms. Strickland also suffered hardship with respect to getting dressed. Getting dressed required Ms. Strickland to use her hand in more ways then she has ever noticed. Before her injuries, she took this common task for granted.

The fitting nature of some of Plaintiff's clothing required an intense measure gripping and pulling, this caused her excruciating pain as well as tears at times from both the frustration and the unwanted pain. Ms. Strickland continues to suffer from impaired functions, as well as pain daily, and has suffered a loss of enjoyment of daily, work, domestic, hobby, and leisure activities. Even the basic activities we take for granted cause pain. As such, we are making a loss of enjoyment of life claim. Ms. Strickland lost enjoyment in performing her job as a result of the injuries caused in this incident. The injuries from this accident have had the following effects on her work. She has had difficulty in performing her normal job duties; her quality of work has decreased, and she is unable to fully perform her job.

Working from home as a pharmacist has been difficult. She could not work from home for a week. The injury has slowed down her performance for a long time. Records of her efficiency prior to incident were greater than after the injury occurred. Her job duties require her to prescribe 2,000 prescriptions per day and the company goal is to review each prescription in 12 seconds. It took her 17-20 seconds to view prescriptions, falling noticeably short of what is expected of her. Trevor Jordan, the Team Leader of the Central Utility Pharmacy noted via email to Ms. Strickland the following in regards to her time performance: It has dropped from March to October 2016.

> 13 March-13 April 2016:
> DR: 16.7 seconds
> CR: 6.5 seconds
>
> 30 October-30 November 2016:
> DR: 12.6 seconds
> CR: 4.7 seconds

Ms. Strickland had to take a week off due to the injury. Her speed determined the work schedule that she would receive. The same rules apply for everyone in Ms. Strickland job description. Essentially, the slower your speed during work, the less favorable your schedule would be. Since Ms. Strickland's performance was low she was at the bottom 10% in her job rankings. The injury to her hand essentially ruined the usual work schedule for the last six months, and has forced her to have to work evenings. Ms. Strickland continued working in order to maintain financial stability. Indeed, she did not get the stitches out until four (4) weeks, and stated that the both she and doctors were in fear that her fingers would split open again.

9. As a result Sharkninja's defective product, Plaintiff had to seek medical attention.

10. Plaintiff experience significant mental and physical pain and suffering, has sustained permanent injury, has suffered financial or economic loss, including, but limited to, obligations for medical services and expenses.

11. Defendant designed, manufactured, marketed, packaged, labeled, and sold the Blender, the product used by Plaintiff.

## CAUSES OF ACTION
## COUNT 1: NEGLIGENCE

12. Plaintiff incorporates by reference paragraphs 1-11 of this Complaint as if fully set forth herein.

13. Defendant had a duty to individuals, including Plaintiff, to use reasonable care in designing, manufacturing, marketing, labeling, packaging and selling the Blender.

14. Defendant was negligent in failing to use reasonable care in designing, manufacturing, marketing, labeling, packaging and selling the Blender.

15. As a direct and proximate result of Defendant's negligence, Plaintiff was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

## COUNT II: STRICT LIABILITY- DESIGN DEFECT

16. Plaintiff incorporates by reference paragraphs 1-15 of this Complaint as if fully set forth herein.

17. The Blender was not reasonably safe for its intended uses and was defective as a matter of law with respect to its design.

18. As a direct and proximate result of the Blender's aforementioned defects, Plaintiff was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

19. Defendant is strictly liable to Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling a defective product.

## COUNT III: STRICT LIABILITY - MANUFACTURING DEFECT

20. Plaintiff incorporates by reference paragraphs 1-19 of this Complaint as if fully set forth herein.

21. The Blender was not reasonably safe for its intended uses and was defective as a matter of law with respect to its manufacture.

22. As a direct and proximate result of the Blender's aforementioned defects, Plaintiff was caused and/or in the future will be caused to suffer severe personal injuries, pain and

suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

23. Defendant is strictly liable to Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling a defective product.

## COUNT IV: STRICT LIABILITY - FAILURE TO WARN

24. Plaintiff incorporates by reference paragraphs 1-23 of this Complaint as if fully set forth herein.

25. The Blender was not reasonably safe for its intended uses and was defective as a matter of law due to its lack of appropriate and necessary warnings.

26. As a direct and proximate result of the Blender's aforementioned defects, Plaintiff was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

27. Defendant is strictly liable to Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling a defective product.

## COUNT V: BREACH OF EXPRESS WARRANTY

28. Plaintiff incorporates by reference paragraphs 1-27 of this Complaint as if fully set forth herein.

29. Defendant made assurances to the general public and consumers that the Blender was safe and reasonable fit for its intended purposes.

30. Plaintiff chose the Blender based upon Defendant's warranties and representations regarding the safety and fitness of the Blender.

31. Plaintiff reasonably relied upon Defendant's express warranties and guarantees that the Blender was safe, merchantable, and reasonably fit for its intended purposes.

32. Defendant breached these express warranties because the Blender was unreasonably dangerous and defective and not as Defendant had represented.

33. Defendant's breach of its express warranties resulted in a laceration of Plaintiff's finger, whereby Galveston Area Ambulance Authorities arrived on the scene of the accident.

34. Defendant's unreasonably dangerous and defective product placed Plaintiff's health and safety in jeopardy.

35. As a direct and proximate result of the Blender's aforementioned express warranties, Plaintiff was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

## COUNT VI: BREACH OF IMPLIED WARRANTY

36. Plaintiff incorporates by reference paragraphs 1-35 of this Complaint as if fully set forth herein.

37. Defendant impliedly warranted that the Blender was merchantable and was fit for the ordinary purposes for which it was intended.

38. When Plaintiff was using the Blender to make a smoothie, it was being used for the ordinary purposes for which it was intended.

39. Plaintiff relied upon Defendant's implied warranty of merchantability in using the Blender.

40. Defendant breached this implied warranty of merchantability because the Blender was neither merchantable nor suited for its intended uses as warranted.

41. Defendant's breach of its implied warranty resulted in a laceration of Plaintiff's finger, whereby Galveston Area Ambulance Authorities arrived on the scene of the accident.

42. Defendant's unreasonably dangerous and defective product placed Plaintiff's health and safety in jeopardy.

43. As a direct and proximate result of the Blender's aforementioned implied warranty, Plaintiff was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

## **COUNT VIII: PUNITIVE DAMAGES**

44. Plaintiff incorporates by reference paragraphs 1-43 of this Complaint as if fully set forth herein.

45. Defendant knew or should have known that the Blender was defective and presented unreasonable risks of harm to Plaintiff.

46. Defendant sold the Blender to Plaintiff and other consumers in Texas and throughout the United States without adequate testing to ensure that the Blender was reasonably safe for its intended use.

47. Defendant's conduct as described in this Complaint, for which Plaintiff is entitled to recover compensatory damages, manifested a conscious indifference to, and/or flagrant disregard of, the safety of those persons who might foreseeably have been harmed by the Blender, including the Plaintiff, justifying impositions of punitive damages.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. That the Court provide the Plaintiff with a jury trial;

B. That judgment be entered in favor of the Plaintiff and against the Defendant;

C. That the Court grant Plaintiff's product liability claim;

D. That the Court award the Plaintiff compensatory damages;

E. That the Court award the Plaintiff punitive damages;

F. That the Court award the Plaintiff reasonable attorney's fees and costs and interest; and

G. That the Court award such other financial or equitable relief as is reasonable and just.

**RESPECTFULLY SUBMITTED,**

_____
DASEAN A. JONES
State Bar No. 24078750
Federal Bar No. 1503177
5330 Griggs Road, Box 7
Houston, Texas 77021
281.888.4119 main | 832.827.3983 fax
djones@daseanjones.com
**Attorney for Plaintiff, Deborah Strickland**